IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROSALYN J. HOFFMAN, Administratrix of )
the Estate of RICHARD H. HOFFMAN, )
deceased, )
                                                                                 Plaintiff, )
)
            v. )      No. 2:04-cv-1825
)      Judge Thomas M. Hardiman
BOROUGH OF AVALON, )
)
                              Defendant. )

## OPINION

### I. Introduction

Plaintiff Rosalyn Hoffman (Mrs. Hoffman) filed this §1983 action against Defendant Borough of Avalon (Avalon or Borough), alleging that Avalon is liable for the death of her husband, Richard Hoffman (Mr. Hoffman). Mr. Hoffman died tragically in a one-car accident after he was stopped by Avalon police officers in the early morning hours of May 24, 2004. The Borough filed a motion for summary judgment, arguing that Plaintiff cannot succeed under the "state-created danger" doctrine. For the reasons that follow, Defendant's motion will be granted.

### II. Facts

In the early morning of May 24, 2004, Mrs. Hoffman was at the home of one Robert Brown (Brown), who resided in Avalon, some fifteen miles from her home in Upper St. Clair. Aware that his wife was at Mr. Brown's residence, Mr. Hoffman first made a threatening call to

Brown's residence and later, at approximately 2:30 a.m., Mrs. Hoffman and Brown were awakened by the ruckus of Mr. Hoffman banging on Mrs. Hoffman's car. Mr. Hoffman then walked to the end of the street where his vehicle was parked and drove away while Mrs. Hoffman called 911, providing a description of Mr. Hoffman and his vehicle. Shortly thereafter, Officer Paul Lawry (Lawry) of the Avalon Police Department responded to the 911 call by going to Brown's residence.

When Officer Lawry arrived, Brown showed him the damage to Mrs. Hoffman's car and Lawry said that he had been communicating with Officer Craig Cannella (Cannella), who had stopped Mr. Hoffman soon after he left the area. Mrs. Hoffman then told Officer Lawry that Mr. Hoffman was an alcoholic. Meanwhile, upon approaching Mr. Hoffman's vehicle, Officer Cannella observed that Mr. Hoffman appeared to be sweating and had bloodshot eyes. During the course of his initial questioning, Officer Cannella detected the odor of alcohol emanating from the vehicle and asked Mr. Hoffman, who was wearing shorts and a shirt but no shoes, to exit the vehicle.

Officer Cannella questioned Mr. Hoffman about the incident at Brown's residence and he denied having been there. Through further questioning, Officer Cannella discovered that Mr. Hoffman had a loaded handgun in his car and a permit allowing him to carry it. Officer Cannella then removed the ammunition from the pistol and confiscated Mr. Hoffman's gun permit. After Officer Cannella stated that he could smell alcohol, Mr. Hoffman admitted to drinking beer that evening. Officer Cannella then told Mr. Hoffman that he would administer field sobriety tests, which Mr. Hoffman performed satisfactorily.

After he departed Mr. Brown's residence, Officer Lawry arrived at the scene as Officer Cannella was demonstrating the last field sobriety test to Mr. Hoffman. Officer Lawry observed Mr. Hoffman pass the "walk and turn" field sobriety test, in which the individual is instructed to walk a straight line, taking nine steps in one direction toe-to-heel, turn, and take nine steps toe-to-heel to the original starting point. Officer Lawry then informed Officer Cannella that Mrs. Hoffman had advised him that Mr. Hoffman was an alcoholic. Officer Lawry asked some additional questions and then administered a Horizontal Gaze Nystagmus (HGN) test to check Mr. Hoffman's motor skills and eye movement to ascertain whether his ability to operate a motor vehicle safely was impaired. Mr. Hoffman passed the HGN test, during which Officer Lawry observed that Mr. Hoffman was able to follow instructions, stood without swaying, and walked in a normal manner. Mr. Hoffman was then advised that the officers would file charges of criminal mischief, take his gun permit, and contact the Sheriff's office in the morning to have the gun permit revoked.

Officer Cannella testified that, by this time, he believed that Mr. Hoffman was intoxicated. Nevertheless, neither Officer Lawry nor Office Cannella took Mr. Hoffman into custody because they did not believe they had probable cause to arrest him. The officers observed Mr. Hoffman drive away from the scene, make a stop at a posted stop sign, and continue to drive down a hill without evidence of impairment. The officers then went to Brown's house and reported that Mr. Hoffman had passed all of the field sobriety tests and that they would be filing criminal charges against him for damaging Mrs. Hoffman's vehicle.

After Mr. Hoffman drove away, he traveled some eighteen miles before he struck a legally parked, unattended vehicle along the west berm. Robinson Township police officers and

Case 2:04-cv-01825-TMH   Document 34   Filed 08/22/06   Page 4 of 12

paramedics arrived at the scene of the accident and Mr. Hoffman was transported to Allegheny General Hospital in Pittsburgh, Pennsylvania, where his blood alcohol count was 0.244 according to laboratory testing. Mr. Hoffman underwent surgery for internal trauma, but died at 6:15 a.m. on May 24, 2004.

### III. Standard of Review

Summary judgment is required on an issue or a claim when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986); *Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). An issue is "material" only if the factual dispute "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks omitted). The parties have a duty to present evidence; neither statements of counsel in briefs nor speculative or conclusory allegations satisfy this duty. *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). After the moving party has filed a properly supported motion, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The non-moving party must make a showing sufficient to establish the existence of each element

4

essential to her case on which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

## IV. Analysis

### A. The "State-Created Danger" Doctrine

Both counts of Plaintiff's complaint assert claims under 42 U.S.C. §1983, which provides a civil remedy for deprivation of federally protected rights caused by individuals acting under color of state law. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Thus, the Court's "initial inquiry must focus on whether two essential elements of a §1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether the conduct deprived a person of rights, privileges, or immunities secured by the Constitution of the United States." *Taylor*, 451 U.S. at 535.

Mrs. Hoffman claims that Avalon violated §1983 by subjecting Mr. Hoffman to a danger that it created when Officers Lawry and Cannella failed to take him into custody. Earlier this year, in *Bright v. Westmoreland County*, 443 F.3d 276 (3d Cir. 2006), the Court of Appeals for the Third Circuit analyzed in some detail the "state created danger" doctrine. In *Bright*, the Court of Appeals first discussed the decision of the Supreme Court in *DeShaney v. Winnebago Cty. Soc. Servs. Dept.*, 489 U.S. 189 (1989), which held that "the Due Process Clause did not impose an affirmative obligation on the state to protect its citizens." *Bright*, 443 F.3d at 280, *citing DeShaney*, 489 U.S. at 195-96. Rather, "its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* Nevertheless, a "constitutional violation can occur when state authority is affirmatively employed in a manner that injures a

citizen or renders him more vulnerable to injury from another source than he or she would have been in the absence of state intervention. This complement to the *DeShaney* holding has come to be known in its progeny as the 'state-created danger doctrine.'" *Bright*, 443 F.3d at 281, *citing Schieber*, 320 F.3d at 416 (internal citation omitted).

The Court in *Bright* reiterated the four essential elements of a meritorious 'state-created danger' claim:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright*, 443 F.3d at 281(internal citations omitted). To prevail on her claim, Mrs. Hoffman must prove all four of the foregoing essential elements. Taking all facts and inferences in the light most favorable to her, it is clear that Mrs. Hoffman's claims fail to satisfy at least two of the necessary elements.[1]

          1.      The State Actors Did Not Act With A Degree of Culpability That Shocks the Conscience.

In *Rochin v. California*, 342 U.S. 165 (1952), the Supreme Court established that violations of substantive due process occur when state action shocks the conscience. *Id.* at 172-73. In *Sacramento v. Lewis*, 523 U.S. 833 (1998), the Court reiterated the proper standard for

---

[1] For purposes of this Opinion, the Court assumes that Plaintiff can satisfy the first and third elements of the state-created danger test.

gauging the seriousness of alleged substantive due process violations. "Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense . . . . To this end, for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience." *Id.* at 846 (internal citation and punctuation omitted). In *Lewis*, the parents of a motorcycle passenger killed during a high speed chase sued claiming that the police violated the decedent's substantive due process rights. The Supreme Court disagreed, stating:

> While prudence would have repressed the reaction, the officer's instinct was to do his job as a law enforcement officer, not to induce [decedent's] lawlessness, or to terrorize, cause harm, or kill. Prudence, that is, was subject to countervailing enforcement considerations, and while [Officer] Smith exaggerated their demands, there is no reason to believe that they were tainted by an improper or malicious motive on his part. Regardless whether Smith's behavior offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound practice, it does not shock the conscience, and petitioners are not called upon to answer for it under § 1983.

*Lewis,* 523 U.S. at 855. Similarly, the actions of the police officers in this case, while possibly imprudent with the benefit of hindsight, clearly were not tainted by an improper or malicious motive to harm or kill Mr. Hoffman. Indeed, it is clear from the facts that Officers Lawry and Cannella were trying to keep the peace and enforce the law.

Officers Cannella and Lawry responded to an emergency call and detained Mr. Hoffman to determine if he had broken the law. Both officers administered field sobriety tests, which Mr. Hoffman passed, and neither officer believed that there was probable cause to detain him further. In addition, the officers confiscated the ammunition in Mr. Hoffman's gun and advised him that his permit would be revoked and he would be cited for his behavior. Plaintiff offers no evidence

that the officers improperly applied the field sobriety tests or were deficient in following proper procedures. Rather, Plaintiff insists that Avalon had insufficient procedures in place and that the officers failed to take additional steps within their authority to prevent injury to Mr. Hoffman. Plaintiff also points to the admission of Officer Cannella that, despite the results of the field sobriety tests, he believed Mr. Hoffman to be intoxicated. Despite Officer Cannella's subjective belief, however, once Mr. Hoffman passed the field sobriety tests, there was no probable cause to arrest him. This judgment call at the scene, although tragic in retrospect, is a far cry from the level of conscience-shocking behavior under *Lewis* and its progeny.

2. The State Actors Did Not Use Their Authority In A Way That Created A Danger To Mr. Hoffman Or That Rendered Him More Vulnerable To Danger Had They Not Acted At All

Even if Plaintiff could satisfy the second element of the state-created danger test, she plainly fails to satisfy the fourth element, which requires that a state actor affirmatively use his or her authority to create a danger. The Court of Appeals in *Bright* stated: "it is important to stress, for present purposes, that under the fourth element of a state-created danger claim, liability . . . is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger. It is misuse of state authority, *rather than a failure to use it*, that can violate the Due Process Clause." *Id.* at 282 (internal citations omitted) (emphasis added). In the instant case, while Plaintiff challenges the decision made by the officers at the scene, her claim depends entirely on what they *failed to do*, rather than what they *did*. Whatever further measures the officers could have taken, it is clear that their actions did not leave Mr. Hoffman "more vulnerable to danger than had the state not acted at all." *Id.* at 281. In fact, the officers left Mr. Hoffman in a better position than they found him.

8

When Officer Lawry pulled him over, Mr. Hoffman was fleeing the scene of a crime, under the influence of alcohol, with a loaded handgun on the passenger seat. Some twenty minutes later, having determined that Mr. Hoffman was fit to operate the vehicle and having confiscated his ammunition, the officers permitted him to leave. Thus, Mr. Hoffman left the scene without a loaded weapon and slightly less impaired by alcohol. Not only did the officers not take any action that left Mr. Hoffman more vulnerable, but they improved his situation slightly. Once again, with the benefit of hindsight, it is undoubtedly true that had Mr. Hoffman been taken into custody on May 24, 2004, he would not have died tragically that morning. It is equally true, however, that the officers did nothing to make Mr. Hoffman more vulnerable than he was when they first encountered him. Thus, this case is quite unlike cases in which a state-created danger was found. *See, e.g. Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996); *Rivas v. City of Passaic*, 365 F.3d 181 (3d Cir. 2004); *Estate of Rhoad v. East Vincent Tp.*, 2006 WL 1071573 (E.D. Pa. 2006).

### B.    Plaintiff Has Failed to Demonstrate a Pattern or Practice

In this case, Plaintiff has sued only the municipality of Avalon. The law is clear that municipalities cannot be liable merely because their employees are tortfeasors. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, at 691 (1978).

> The Supreme Court in *Monell* . . . held that a municipality can be held liable as a person under section 1983 when it unconstitutionally implements or enforces a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the officers of that municipality. By contrast, the Court expressly rejected municipal § 1983 liability based on a respondeat superior theory, finding Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.

*Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000) (internal citations omitted).

Plaintiff claims that Avalon's policies and procedures allowed the officers to disregard, among other things, Mr. Hoffman's appearance, the smell of alcohol, and the fact that he was a known alcoholic. Plaintiff also argues that the procedures implemented by the Borough and used by the officers were the proximate cause of Mr. Hoffman's death because they were insufficient to deal with an individual who appeared intoxicated yet passed field sobriety tests. Thus, Plaintiff takes issue with the lack of a sufficiently protective procedure, rather than the actual procedures. The Supreme Court has clearly stated, however, that "the inadequacy of police training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). The Third Circuit, in applying this standard, held:

> A plaintiff must identify a municipal policy or custom that amounts to deliberate indifference to the rights of people with whom the police come into contact. This typically requires proof of a pattern of underlying constitutional violations. Although it is possible, proving deliberate indifference in the absence of such a pattern is a difficult task. In addition to proving deliberate indifference, a plaintiff must also demonstrate that the inadequate training caused a constitutional violation. There must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.

*Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004) (internal citations omitted). Here, Plaintiff merely claims that the "Manual of Procedural Orders" (Manual) of the Avalon Police Department is unconstitutional because it does not instruct officers how to handle drivers found in Mr. Hoffman's condition.

There are several problems with this argument. First, the Manual appears to deal exclusively with the general professional guidelines, duties, and responsibilities of police officers,

rather than the substantive practices and procedures they employ in discharging their duties. For example, the various types of sobriety tests are not mentioned anywhere in the Manual, nor are there guidelines on how to perform a traffic stop. Thus, it is obvious that the Manual does not purport to encompass all police policies and procedures. Moreover, Plaintiff has not cited any other manual or written policy to support her claims, nor has she alleged a pattern or practice of the Avalon Police Department knowingly permitted drunk drivers to operate motor vehicles. The Plaintiff bears the burden of identifying the policy or custom that amounts to deliberate indifference, and has she failed to do so in this case.

Secondly, even assuming that there were an explicit policy or procedure in place directing officers to allow drivers who had passed a battery of field sobriety tests and yet appear intoxicated to continue to operate a motor vehicle, it is clear that such a policy falls far short of deliberate indifference under controlling law. *See, e.g., Schieber v. City of Philadelphia* 320 F.3d 409 (3d Cir. 2003) (officers' failure to enter apartment while murder victim bled to death and neighbor had called 911 reporting screams was not deliberate indifference); *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) ("Failure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations"). Therefore, Plaintiff has fallen well short of carrying her burden to establish a policy, practice, or custom that could render Avalon liable under §1983.

## V.   Conclusion

In sum, because Plaintiff has not established a constitutional violation under the "state-created danger" theory, she cannot prevail on her claim for deprivation of constitutional rights

under §1983. Furthermore, Plaintiff has not produced evidence to demonstrate that any alleged constitutional violations were the result of the practices or procedures of the Borough. Thus, summary judgment is appropriate for two independent reasons.

An appropriate order follows.

*Thos M. Hardiman*
Thomas M. Hardiman
United States District Judge

Dated:   August 22, 2006